## UNITED STATES v. INGHAM et al.

(District Court, E. D. Pennsylvania. November 18, 1899.)

1. CRIMINAL LAW — BRIBERY OF UNITED STATES OFFICIALS—CONSTRUCTION OF STATUTE.

In Rev. St. § 5451, which makes it a criminal offense to bribe or attempt to bribe any officer of the United States, or "any person acting for or on behalf of the United States in an official function, under or by authority of a department or office of the government thereof," the latter clause must be construed as including persons not officers, and a secret-service operative employed by the secretary of the treasury to aid in the detection and suppression of frauds or crimes against the revenue laws, with which duty the secretary is charged, while in the performance of such service, is acting on behalf of the United States in an "official function" of the secretary, and his bribery or attempted bribery to collude in or allow a fraud on the United States is an offense within the terms of the statute.

2. SAME—TRIAL—COERCION OF VERDICT.

The failure to discharge a jury on their announcing a disagreement does not constitute coercion by the court which vitiates a verdict afterwards returned, where it subsequently appeared that the disagreement was entirely because they did not clearly understand the charge of the court in certain particulars, and, when it was further explained, they soon reached an agreement.

3. SAME—INSTRUCTIONS ASKED.

Where a point which the court is asked to charge by the defendant is stated in the charge of the court in substantially the same language, it is, in effect, affirmed, and error cannot be predicated on the fact that it was not read to the jury, and expressly affirmed.

On Motion in Arrest of Judgment and for a New Trial.

James M. Beck, U. S. Atty., and Francis F. Kane, Asst. U. S. Atty. Albert S. L. Shields, for defendants.

McPHERSON, District Judge. I have considered with care the motions in arrest of judgment and for a new trial, but without being able to adopt the defendants' views upon either motion. It is unnecessary to elaborate the reasons that oppose these views, or to discuss the numerous cases that have been cited upon the one side and the

other in the learned and exhaustive briefs of counsel, but I may indicate briefly the grounds of the refusal.

1. I agree that McManus was not an "officer" of the United States, but I am satisfied that he was a "person acting for or on behalf of the United States in an official function, under or by authority of a department or office of the government thereof," and that he held a "place of trust or profit," within the meaning of section 5451 of the Revised Statutes.

The phrase "official function," taken in connection with the other language of the section, is, I think, of broader scope than the defendants' counsel is willing to admit. His position is that no one can exercise an official function unless he be an "officer" of the United States; and, if this argument is to prevail, the two provisions of the section are identical in meaning, although it is clear that congress supposed the words to be descriptive of two distinct classes of persons. This result is to be avoided if a fair and reasonable construction will lead to a different conclusion. In my opinion, such a construction is obvious, and relieves the case in hand from difficulty. The "official function" spoken of is not necessarily a function belonging to an office held by the person acting on behalf of the United States; it may also be a function belonging to an office held by his superior, which function has been committed to the subordinate (whether he be also an officer, or a mere employé) for the purpose of being executed. Thus—turning to the facts of the present case—it is an official function of the secretary of the treasury to detect and suppress certain crimes, and by his authority, lawfully exercised, the execution of this function has been (at least in part) intrusted to the secret-service operatives, who thereupon act on behalf of the United States as his subordinates or employés. The law lays the function upon him; but, as he cannot do the work alone, he is, of necessity, permitted to appoint others to share in the labor; and in this particular such appointees stand in his place. What the precise limits of an official "function" may be I do not attempt to lay down. At all events, the word embraces so important a duty as the detection and suppression of crime, although it might not, and, indeed, clearly does not, embrace every trivial labor to which a subordinate may be set.

If this construction is correct, those counts of the indictment that charge the defendants with bribing or attempting to bribe McManus, describing him as a person acting for or on behalf of the United States in an official function, are good; and these counts alone are sufficient to support the verdict.

2. The alleged insanity of a juror during the trial or the deliberations of the panel has not been proved. I think the fact may be that the nervous strain to which he was thus subjected may have helped materially to bring on the attack from which he is now suffering, but the attempt to prove that he was mentally unsound at any time during the 10 days in question was far from convincing.

3. That the jury were not coerced into agreement seems to me clear from one fact, if from no other. It appeared from their own statement on the last day of their deliberation that they were dis-

agreeing merely because they had not clearly understood the instructions of the court in certain particulars. I have seen this happen before, and it has rarely occurred that a disagreement, which a jury has declared repeatedly to be conscientious, and impossible to be overcome, has not been speedily harmonized, when the precise points of difference were distinctly stated, and presented to the court for further instruction. I supposed this to be the situation here, and the course of events made it clear that the supposition was correct. As soon as the jury's difficulties were made known, they were removed by a few words of explanation, and an agreement followed with little further delay. It seems to me that this consideration takes away all support from the averment that unlawful pressure by the court was the agency that brought about the verdict.

4. The other objections mainly concern alleged errors of law, and, if these are found to exist, they can be corrected on appeal. Of course, I should grant the proper relief myself by setting the verdict aside if I were convinced that I had harmed the defendants by an erroneous ruling; but a reconsideration of the points in which mistake is alleged does not shake my belief in the soundness of the views that I expressed at the trial.

5. With regard to my failure to answer the defendants' point concerning the weight to be given to evidence of good reputation, I may say that I probably did not read the point to the jury, because I had used almost the exact language in the charge. That this was regarded at the time as equivalent to affirmance is shown by the fact that no exception was taken to the failure to give the point a formal answer. An exception was merely taken to the refusal to affirm the points that were refused. This point was not refused; it was affirmed substantially, although not in so many words.

The motions in arrest of judgment and for a new trial are accordingly overruled. To this action of the court upon the motion in arrest of judgment an exception is sealed for the defendants.