### UNITED STATES v. KRICHMAN.

(District Court, S. D. New York. April 7, 1919.)

BRIBERY ⬤⟞1(2)—UNITED STATES OFFICER—PERSON ACTING IN "OFFICIAL FUNCTION."

The provision of Criminal Code, § 39 (Comp. St. § 10203), making it an offense to bribe any person acting for or on behalf of the United States "in any official function, under or by authority of any department or office of the government thereof," *held* to include within such definition a baggage porter employed in the baggage room of a railroad then being operated by the Director General of Railroads.

[Ed. Note.—For other definitions, see Words and Phrases, Official Function.]

Criminal prosecution by the United States against Harry Krichman. On motion by defendant for new trial. Denied.

This is a motion for a new trial upon conviction by the defendant upon three counts of an indictment, which alleged that he attempted to bribe a baggage porter employed by the Director General of Railways at the Pennsylvania Terminal, New York. It was proved upon the trial that the defendant had approached one Zwillinger, who was then engaged as a baggage porter in the baggage room at the Pennsylvania Terminal in the city of New York, and offered to bribe him to deliver to the defendant from time to time trunks containing furs, which were checked from the Pennsylvania station to points outside the state of New York. Zwillinger, after the first interview, reported to his superiors, who directed him not to alarm the defendant, and to let him proceed if he would. Afterwards the defendant paid Zwillinger a sum of money and obtained from him delivery of a trunk containing valuable furs, which he took with him to the Grand Central Terminal in the city of New York. Shortly after he was apprehended by the Pennsylvania detectives, who had kept him under observation from the time he entered the Pennsylvania Terminal.

The judge charged the jury that, if they found the facts to be as stated below, the defendant was guilty. The defendant took no exception to the charge, and although he moved for the direction of a verdict, both at the close of the government's case and at the close of his own case, he did not raise the point that Zwillinger was not acting in an official capacity on behalf of the United States under the authority of a department of the United States. Criminal Code (Act March 4, 1909, c. 321) § 39, 35 Stat. 1096 (Comp. St. §. 10203). He now moved for a new trial upon the ground that a baggage porter in the employ of the Director of Railways is not such a person within the section in question.

Edward Schoen, of Newark, N. J., for the motion.
David V. Cahill, of New York City, for the United States.

LEARNED HAND, District Judge. A motion for a new trial is always in the discretion of the court. Mattox v. U. S., 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917. And as the point now raised was not suggested upon the trial, and there was therefore no exception

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

touching it, I might, without more, deny this motion. Nevertheless, the objection goes to the very essence of the charge, and could not have been corrected, had it been raised upon the trial, and, if it be good, the defendant has been illegally convicted. It seems to me, therefore, in the interests of justice to consider the matter upon its merits, rather than to subject the defendant to the possibility of suffering punishment for a crime which he could not commit.

The leading authority on section 39 is U. S. v. Birdsall, 233 U. S. 223, 34 Sup. Ct. 512, 58 L. Ed. 930, in which a conviction was sustained. In that case the Commissioner of Indian Affairs, with the authority of the Secretary of the Interior, had appointed Brents and Van Werts to be special officers for the suppression of liquor traffic among the Indians. In cases of convictions for violation of the law against selling liquor it had become the custom of the department to investigate through subordinates whether executive or judicial clemency should be exercised; this in the interests of the effective suppression of such traffic. The defendant Birdsall had bribed Brents and Van Werts to obtain their influence in procuring such clemency, and the Supreme Court, in upholding the conviction, decided that they were exercising official functions, although they were not expressly defined by any statute, or even by a regulation, but had arisen from a custom of the department. Similarly a member of the Board of Examining Surgeons appointed by the Commissioner of Pensions was held to be within the statute in U. S. v. Van Leuven (D. C.) 62 Fed. 62, although such officials were not themselves officers of the United States. See U. S. v. Germaine, 99 U. S. 508, 25 L. Ed. 482.

In U. S. v. Ingham (D. C.) 97 Fed. 935, the section was extended to a secret service operative employed by the Secretary of the Treasury, and in Haas v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, to an associate statistician employed by the Department of Agriculture to prepare and publish official reports of the cotton crop. In Re Yee Gee (D. C.) 83 Fed. 145, an interpreter appointed by the Secretary of the Treasury was held not to be within the statute, but for the reason that only the court had any power to appoint interpreters, and that therefore he was not acting under the authority of a department or office of the government. In Sharp v. U. S., 138 Fed. 878, 71 C. C. A. 258, an Indian agent appointed by the Commissioner of Indian Affairs was held to be within the statute.

These are the only cases which I have found having any important bearing upon the section, and none of them presents a very direct analogy to the facts at bar. So far as they go, they all look to a broad construction of the language of the section.

In principle it seems to me that this case is within the law. The Director General of Railways is an office or department of the government charged with the operation of the railways of the United States, and Zwillinger was acting under his authority. It is, of course, true that he was appointed and discharged by subordinates who were in turn not appointed by an "officer" of the United States, as defined in U. S. v. Germaine, supra. Nevertheless, although at

several removes, he was acting under the authority of the Director General. Moreover, in caring for and dispatching baggage intrusted to the railroad, he was acting on behalf of the United States, since the dispatch of baggage was a duty which the United States had assumed and which only baggage porters could discharge. So the sole question is whether he was acting in an "official function."

It must be conceded that the section would as well cover the case if the words "official function" were omitted, and that it is something of a strain upon the ordinary use of language to speak of a baggage porter's duties as "official." Yet the business of operating a railway is nothing more than that of moving persons and things from one place to another, and a baggage porter actually performs a part of that movement. It is quite impossible to establish any consistent line, based upon the importance of his duties, which will make them any the less "official." Nobody, I should think, would say that a traffic manager had no official functions, or indeed a freight dispatcher, or a ticket seller. At least about them I can see no plausible doubt. With deference there seems to be no basis for the limitation thrown out obiter by Judge McPherson in U. S. v. Ingham, supra. No doubt we ought not to press logic to its conclusions, for we are only dealing with common words, but we ought to execute the purposes which the words contain.

If we look at the purpose of the section, there seems to me every reason not to draw any line based upon the supposed inaptitude of the words "official function." The section is full of verbiage, no doubt, but its very presence shows its desire for comprehension. The draftsmen certainly wished to include all efforts by corruption to impede the success of the United States in any of its enterprises. All such enterprises are official as soon as the United States lawfully undertakes them, and any interference with them, by debauching those on whom any part of their execution is imposed, is a prejudice to the United States, whether the impediment be grave or trivial. This result is the evil against which the statute is clearly aimed, and it seems to be covered by the use of a phrase like "official function," without undue violence to common use. Indeed, if the importance of the duty delegated be a test, the custody and correct dispatch of valuable baggage is certainly not a trivial function.

I think the point is not well taken, and the motion is denied.