402 P.2d 551

**STATE of Arizona, Appellee,**

**v.**

**Robert ALFORD, Appellant.**

**No. 1435.**

Supreme Court of Arizona.

En Banc.

June 3, 1965.

Rehearing Denied June 29, 1965.

Robert W. Pickrell, Atty. Gen., Paul G. Rosenblatt, Asst. Atty. Gen., and Robert Warden, County Atty., of Coconino County, for appellee.

John H. Grace, Flagstaff, for appellant.

BERNSTEIN, Justice.

This is an appeal from a death sentence imposed after a plea of guilty to three counts of first degree murder, charging appellant with the murder of three children, ages 11, 12 and 14.

The bodies of the three children, each of whom had been shot twice, once with a .32 caliber revolver, and again with a .45 were discovered on the morning of June 6, 1963, in a wooded area one mile south of Highway 66 near Williams, Arizona. Marks on her body indicated that the 14 year old child had been beaten. Shots from the .45 were all fired after the children had fallen and the bullets were found in the ground underneath their bodies. Arizona authorities immediately sought the aid of out-of-state law enforcement officers in the search for the killer.

Appellant was arrested in Santa Rosa, California on July 12, 1963 on a warrant charging child molesting in Los Angeles. While in jail on the California charge, and while without counsel, he confessed to the Arizona killings. He was a neighbor of the murdered children and was friendly with them. The homicides occurred on a trip through Arizona en route to Oklahoma made at the request of the children because of difficulties in their foster home in Stockton, California.

The appellant made many conflicting statements while under arrest in California, but on one occasion he confessed to the killings in the presence of a deputy sheriff from Arizona, who testified to this confession at the preliminary hearing. Appellant waived extradition, and was brought to Arizona on July 16, 1963. He was not represented by counsel at any time in California.

Appellant was brought before a magistrate immediately upon his arrival in Arizona, and two continuances were granted at his request. Appellant was not indigent at that time and did not desire court appointed counsel. He did, however, desire to communicate with his sister and have her secure counsel for him. This he was permitted to do, and his sister retained the counsel who represented him at the trial and on this appeal. On this appeal counsel appears by appointment of the court, as appellant's funds are now exhausted. Counsel was not retained, however, until after the preliminary hearing, which was finally held on July 22, 1963. Appellant was bound over to the Superior Court for trial.

An Information charging appellant with three counts of murder in the first degree was filed in the Superior Court on July 26,

1963. On July 30, 1963, appellant appeared in court with counsel for the purpose of arraignment and entered a plea of not guilty to each count. The court then set the case for trial before a jury on September 9, 1963.

On August 2, 1963, the appellant's counsel requested that the trial date be postponed in order to allow him to have an investigation conducted as to his client's mental capacity. The trial was continued to September 23, 1963. On September 23, 1963, the appellant appeared before the Superior Court with his counsel and requested an examination by a psychiatrist pursuant to Rule 250 Rules of Criminal Procedure, 17 A.R.S. The court ordered that Dr. Maier Tuchler conduct an examination of the appellant.

Appellant was examined on several occasions in the office of Dr. Tuchler. He was further examined by Dr. Aaron Canter, a Clinical Psychologist at the Veterans Hospital in Phoenix. Dr. Tuchler and Dr. Canter both submitted reports to the Superior Court advising that appellant was legally sane and fully able to cooperate and assist counsel in his defense.

On September 20, 1963, appellant appeared in person and with counsel in Superior Court at which time Dr. Tuchler appeared and elaborated on his written report, again concluding that appellant was legally sane and fully able to assist in his defense. At this time appellant moved for an order allowing him to withdraw his plea of not guilty. This motion was granted by the trial judge. As to each count, appellant entered a plea of guilty. October 7, 1963, was then set as the time for passing of sentence on each of the three counts of murder in the first degree. The County Attorney was requested to furnish the court with a written report as to the details of the state's case. This report, accompanied by the appellant's confessions, was subsequently submitted to the court for its consideration together with a statement prepared on behalf of appellant by his counsel. On October 7, 1963, appellant appeared before the court for sentencing. Before sentence was imposed appellant made a request to withdraw his pleas of guilty. This request was denied.

Appellant's first and second assignments of error are based on the fact that he did not have counsel in California, nor when first questioned in Arizona, and that he had no counsel at the preliminary hearing.

Appellant relies upon Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 to support these two assignments. The requirements of Gideon were

met. Appellant was represented by counsel of his own choosing at the time he was first arraigned in the Superior Court and at the time he pled guilty.

White, Malloy and Escobedo are inapplicable. There was no trial on the issue of guilt in this case, because of appellant's plea of guilty, and nothing that happened at the preliminary hearing was received in evidence against him on the issue of his guilt or innocence. The confessions were part of the material considered by the trial judge in determining whether to impose a sentence of death or life imprisonment after the plea of guilty while represented by counsel.

A plea of guilty being properly before the court, the proceedings did not prejudice any rights of appellant. No ruling on the voluntariness or admissibility of appellant's confessions was made nor was one necessary. A plea of guilty waives production of all evidence of guilt, and thereafter a defendant may not question the legal sufficiency of the evidence against him. State v. Murphy, 97 Ariz. 14, 396 P.2d 250 (1964); People v. Lehman, 51 Ill.App.2d 163, 200 N.E.2d 528 (1964).

The trial judge had before him both the confessions and their repudiation, and information concerning appellant's criminal record and previous confinement in an insane asylum in California. Much of this material could not have been submitted to a a jury charged with determining the guilt or innocence of the appellant. The question of guilt having been determined by the plea of guilty, however, its consideration by the judge in determining the sentence was eminently proper. In order that the court may properly carry out the intent of Rule 336 Rules of Criminal Procedure the court on sentencing where a hearing has been requested or on his own motion should consider the nature of the offense, the character of the defendant, available information as to the defendant's past conduct, the past record and criminal activities of the defendant, and the defendant's moral character and associations. State v. Fenton, 86 Ariz. 111, 341 P.2d 237; State v. Levice, 59 Ariz. 472, 130 P.2d 53.

In State v. Douglas, 87 Ariz. 182, 187, 349 P.2d 622, 625, we said:

"It must be conceded that the passing of sentence in a criminal case is one of the most difficult and trying tasks a court is called upon to perform. This for the reason the liberty (ofttimes the very life) of a human being, as well as his whole future are at stake. Justice Henry Alfred McCardie aptly stated:

'Trying a man is easy, as easy as falling off a log, compared with deciding what to do with him when he has been found guilty.'

"A conscientious judge will therefore (if needs be on his own motion) inquire into all of the facts and circumstances surrounding the alleged offense. See, State v. Fenton, 86 Ariz. 111, 341 P.2d 237; State v. Smith, 66 Ariz. 376, 189 P.2d 205; and State v. Bigelow, [76 Ariz. 13, 258 P.2d 409, 39 A.L.R.2d 979.]"

In State v. Fenton, supra, as here, this court was called upon to review a death sentence imposed after a plea of guilty. The cases are remarkably similar, and an objection raised included the consideration by the judge of a "confession". This court was urged to reduce the death penalty to life imprisonment. We said:

"The trial court at a pre-sentence hearing is not bound by the strict rules of evidence applying in trials". 86 Ariz. at 119, 341 P.2d at 242.

These assignments are governed by Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337. In Williams the defendant was convicted of first degree murder, and the jury recommended mercy. As permitted by New York law, the trial judge disregarded the jury's recommendation, and imposed a death sentence. The judge's action was based upon a confession and other material including evidence of other offenses which were not admitted into evidence, and would have been held to be inadmissible if offered. The United States Supreme Court upheld the death sentence.

In Williams, as in this case, evidence inadmissible at the trial was properly considered by the judge in determining the sentence. As Justice Black said in Williams:

"In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has been specifically accused. * * * A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applica-

ble to the trial." 337 U.S. at 246, 69 S.Ct. at 1083.

See also People v. Spann, 20 Ill.2d 338, 169 N.E.2d 781, and Note, 96 A.L.R.2d 768 (1964).

In Rainsberger v. State, 399 P.2d 129 (Nev.1965) Rainsberger pled guilty to a charge of first degree murder. His confession was received as relevant to the questions of degree and penalty. He had not been represented by counsel at the time of the confession or at the preliminary hearing. Objection to the use of the confession for any purpose was based on Escobedo and White, also relied on by appellant here. The Nevada court distinguished these cases on the ground that the issue of guilt had been removed from the case by the plea of guilty.

"* * * A different complexion is cast upon claimed constitutional violations and other claims of error when, as here, a defendant charged with murder, has voluntarily and with the assistance of competent court-appointed counsel, entered a plea of guilty in open court. The procedure to ascertain the degree of the crime, and fix sentence, is within the constitutional power of a legislature to provide. Hallinger v. Davis, 146 U.S. 314, 13 S.Ct. 105, 36 L.Ed. 986 (1892). The court hearing, following a plea of guilty, is not a trial, for the issue of the defendant's guilt is no longer present [citing cases]. The constitutional safeguards pointing to a fair trial are greatly diluted in significance, for a trial to determine the ultimate issue of innocence or guilt has been waived by the plea of guilty. The presumption of innocence has ceased to exist, and the defendant stands before the court an admitted murderer, asking mercy and understanding with respect to degree and penalty. If the plea of guilty is not itself constitutionally infirm, it would appear that one who has so confessed may not rely upon the constitution to free him." * * *

See also Harris v. United States, 338 F.2d 75, 80 (9th Cir. 1964); Scott v. United States, 231 F.Supp. 360 (D.C.N.J.1964); McKenley v. United States, 235 F.Supp. 255 (D.C.La.1964); United States v. Spada, 331 F.2d 995 (2nd Cir. 1964); Mahler v. United States, 333 F.2d 472 (10th Cir. 1964); Snipe v. United States, 343 F.2d 25 (9th Cir. 1965); United States v. Sturm, 180 F.2d 413, cert. denied 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388 (7th Cir. 1950).

◼ Appellant's third assignment of error is based on the court's refusal to grant a writ of habeas corpus at a hearing held in Superior Court on August 9, 1963. No appeal was taken from the refusal of the trial court to grant the writ, and the mat-.

ter cannot be considered by this court on appeal. A.R.S. § 13–1713, § 13–1715.

■■ Appellant's fourth assignment of error is that the trial court based its finding that appellant was able to assist in his defense upon the M'Naghten Rule. Appellant understood the nature of the proceedings and could assist counsel in his defense at the time the guilty plea was entered. A hearing and examination under Rule 250 had just been concluded. The trial judge had called Dr. Tuchler's attention to the exact language of Rule 250. Dr. Tuchler testified that appellant met the test of sanity provided in that section, and there can be no doubt that appellant understood the plea and its consequences. He is not a mental defective, but possessed average intelligence, and had been a self-supporting plumber most of his life. The M'Naghten Rule does not apply to hearings under Rule 250, where the sole issue is the ability of defendant to assist his counsel in his defense. State v. Crose, 88 Ariz. 389, 357 P.2d 136.

It should be noted that a plea of not guilty by reason of insanity was never entered as required under Rule 192, Rules of Criminal Procedure. State v. Reid, 87 Ariz. 123, 348 P.2d 731. The plea, which was afterwards withdrawn, was a general plea of not guilty entered before the question of insanity was raised for any purpose.

■ In his fifth assignment of error appellant contends that the trial judge abused his discretion in refusing appellant permission to withdraw his plea of guilty. In State v. Jones, 95 Ariz. 4, 7, 385 P.2d 1019, 1021, we said:

"A motion to withdraw a plea of guilty is addressed to the sound discretion of the trial court, 17 A.R.S. Rules of Crim.Proc. rule 188, and in the absence of a clear abuse of that discretion its ruling will not be disturbed on appeal. State v. Corvelo, 91 Ariz. 52, 369 P.2d 903 (1962); State v. Norgard, 92 Ariz. 313, 376 P.2d 776 (1962)."

Corvelo, cited above, illustrates the type of case where we have held it is an abuse of discretion to refuse to permit the withdrawal of a guilty plea. In all his statements Corvelo had maintained his innocence. There was real confusion on the part of both the defendant and his counsel as to the effect of the guilty plea on possible deportation proceedings, and the amended information was in fact defective. Here, appellant's statements as to the facts are inconsistent, and the record shows at the time he pled guilty both appellant and his counsel thought it was the only chance they had to save him from a death sentence.

"An experienced appraisal of the available evidence frequently indicates that

the chance of a successful defense is negligible. The defense attorney may then be serving his client best by advising him to plead guilty and to bargain for the most lenient treatment possible. *To counsel this strategy is not to advise inadequately, even if the expectation of leniency is subsequently disappointed.*" (Emphasis supplied.) Comment, Assistance of Counsel, 7 Harv.L.Rev. 1434, 1441 (May 1965). And see Monroe v. Huff, 79 U.S.App.D.C. 246, 145 F.2d 249 (1944).

If convicted on a plea of not guilty, the jury would set the punishment under A.R.S. § 13–453A, but under the same section this discretion is vested in the trial judge on a plea of guilty. We find the trial judge did not abuse his discretion in refusing to allow appellant to withdraw his plea.

■ The sixth assignment of error is based on the proposition that the trial court abused its discretion in imposing the death sentence. Under A.R.S. § 13–1717 this court may reduce the sentence imposed, if the punishment imposed is greater than under the circumstances of the case ought to be inflicted.

We can not pass upon whether capital punishment, as a public policy, is effective. We are limited to the judicial function of faithfully and impartially interpreting the law as enacted by the legislature. Under the doctrine of separation of powers the public policy of the state in fixing punishment for crime is declared by the legislature and not by this court. The legislature has provided life imprisonment or death as punishment for the crime of murder in the first degree. It is a trying task when a court is called upon to perform this duty when the defendant pleads guilty.

The record shows that at the time of imposing sentence the trial court, in exercising its discretion, weighed and considered all the relevant matters, including material submitted by the defense, as well as the nature of the offense, the character of the defendant, the defendant's past conduct, past record and criminal activities and the defendant's moral character and associations, together with the fact that the defendant, in entering his plea of guilty, admitted all the elements constituting murder in the first degree. The record shows the commission of an atrocious crime and a total lack of any mitigating circumstances. We hold that in imposing the extreme penalty the trial court did not abuse its discretion under the circumstances of this case.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concur.